UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL MARCEL MCLAURIN,**<br>　　　　　Plaintiff,<br><br>v.<br><br>**CORRECTIONS OFFICER KABAT,** *et al.*,<br>　　　　　Defendants. | **2:23-cv-11212-TGB-APP**<br><br><br>**SCREENING ORDER PARTIALLY DISMISSING CLAIMS** |

Michael Marcel McLaurin, a Michigan prisoner without a lawyer who is currently confined at Chippewa Correctional Facility (URF), has filed a complaint against several corrections officials at the St. Louis Correctional Facility (SLF) and URF, alleging that an SLF corrections officer sexually harassed and assaulted him and that prison officials at both facilities ignored and retaliated against him when he reported the assault and harassment. *See* 42 U.S.C. § 1983.

McLaurin has been granted leave to proceed without prepaying filing fees. For the reasons explained below, McLaurin may proceed on his claims against Officer Kabat, Sergeant Dalton, and Inspector Salinas, but his claims against the other Defendants will be **DISMISSED**.

## I. BACKGROUND

McLaurin alleges that he was sexually harassed and assaulted by Officer Kabat on April 22, 2022, while he was still confined at SLF. ECF

No. 1, PageID.4. According to his complaint, Kabat was a housing officer who was tasked with serving meals during first shift. *Id.* McLaurin alleges that when Kabat opened the food slot to McLaurin's cell, he reached into the cell, grabbed McLaurin's penis, and stroked it back and forth. *Id.* McLaurin backed way while Kabat leered at him through the cell window, licking his lips. *Id.* at PageID.8-9. Kabat told McLaurin he would do this "again and again" and would be "back for more." *Id.*

McLaurin tried to report the incident immediately to the first-shift sergeant but was rebuffed. *Id.* at PageID.8. After shift change, he was able to get the attention of the second-shift sergeant, Sergeant Dalton. *Id.* McLaurin asked Dalton for a PREA[1] complaint form, but she refused his request and told him to write up the incident on a blank sheet of paper and submit that to her instead. *Id.*

McLaurin followed Dalton's instructions but simultaneously also grieved the incident administratively. *Id.* Prison administrators converted his grievance into a PREA complaint. *Id.* McLaurin says that, after Inspector Salinas (who is tasked with enforcing rules and regulations at the facility) learned about the complaint from the prison grievance coordinator, he assigned it to Dalton to review. *Id.* at PageID.5.

---

[1] PREA stands for "Prison Rape Elimination Act." It was enacted to "implement[] standards and policies to prevent prison rape and to protect the Eighth Amendment rights of Federal, State, and local prisoners." *Does 8-10 v. Snyder*, 945 F.3d 951, 955-56 (6th Cir. 2019) (internal quotations omitted).

2

Despite being assigned to review the complaint, Dalton did not interview McLaurin, nor did any other SLF staff member. No steps were taken to isolate McLaurin from Kabat. *Id.* at PageID.8-10. So the harassment continued: McLaurin says that Kabat "would walk past [his] door, licking his lips while looking at [him] through the window, and making comments about how he wanted [McLaurin] and what he would do with [McLaurin] once he got his hands on [him]." *Id.* at PageID.9.

McLaurin alleges that, while the PREA complaint was pending, he began to face retaliation from prison staff. For instance, Inspector Salinas placed him on a phone restriction after he refused to sign off on his complaint against Kabat and told his mother about Kabat's continuing harassment over the phone. *Id.* at PageID.4. And his cell was repeatedly shaken down by unnamed corrections officers, resulting in the destruction of his legal papers. *Id.*

McLaurin alleges that he filed additional complaints and grievances over the retaliation and Kabat's continuing harassment, but those grievances were denied at each step of the way. *Id.* at PageID.9-10. On November 14, 2022, McLaurin learned his complaint was dismissed as unsubstantiated for lack of evidence. *Id.* at PageID.10.

At some point, McLaurin was transferred to URF. *Id.* He says that the phone restrictions and cell shakedowns "spilled over" from SLF to URF. *Id.* Moreover, when he requested mental-health treatment via

3

written kites for anxiety, humiliation, and restlessness, his requests for treatment were ignored and destroyed. *Id.*

McLaurin says that he is asserting claims for the violation of his Eighth and First Amendment rights and for violations of the Prison Rape Elimination Act, 42 U.S.C. § 15601. He charges several Defendants—including Dalton (SLF's second-shift sergeant), Salinas (SLF's inspector), Levy (SLF's grievance coordinator), Lamentola (SLF's assistant warden), Christensen (SLF's warden), Baron (an MDOC official in Lansing), and Corrigan (URF's warden)—with doing nothing in response to his complaints and grievances. He also accuses them of failing to supervise their subordinates, failing to protect him from Kabat's continuing harassment, and failing to protect him from retaliation by prison staff for complaining about Kabat. *Id.* at PageID.11-12.

As relief, McLaurin seeks compensatory and punitive damages. He also seeks a declaration that Defendants failed to protect him, retaliated against him, and did not fulfill their obligations under PREA, as well as injunctive relief in the form of protection from future sexual abuse and provision of adequate mental-health care. *Id.* at PageID.3, 14-15.

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act of 1996 (PLRA), a court must dismiss the complaint of a prisoner proceeding without pre-paying filing fees before ordering service on a defendant if the Court determines that the complaint is frivolous or malicious, fails to state a claim, or seeks

4

monetary relief from a defendant who is immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Under this standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

A complaint filed by a self-represented litigant must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, self-represented litigants must still comply with Federal Rule of Civil Procedure 8(a), which requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The standard does not require "detailed" factual allegations, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

To state a § 1983 claim, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person

5

acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (internal quotations omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000). The plaintiff also must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).

## III. DISCUSSION

### A. Eighth Amendment Claims

#### 1. Sexual Abuse

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment," regardless of whether it is perpetrated by corrections officers or other prisoners. *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse … constitute[s] the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (internal quotations and citations omitted).

McLaurin alleges that Kabat stroked his penis, leered at him through his cell window, and repeatedly harassed him by walking past his cell, licking his lips, and telling McLaurin he would be back "again and again" for "more." ECF No. 1, PageID.4, 8. These allegations are

6

specific, detailed, and meet the criteria for sexual abuse. Accordingly, McLaurin has stated a claim against Kabat for violation of his rights under the Eighth Amendment.

### 2. *Failure to Protect*

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). A failure-to-protect claim has both an objective and a subjective element. For the objective element, a prisoner must allege "conditions posing a substantial risk of serious harm." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). For the subjective one, the prisoner must allege that officials "acted with 'deliberate indifference to inmate health or safety," meaning that officials "kn[ew] of and disregard[ed]" an excessive risk of harm. *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 834, 837).

With regard to Dalton, McLaurin alleges that, after denying him the correct form to file a PREA complaint, Dalton was assigned to review his complaint against her subordinate. Despite being aware of his accusations, since McLaurin came to her personally after the assault, she did not interview him or Kabat or take any steps to keep the two separated—so there were no consequences from Kabat's alleged conduct, and he continued uninhibited in stalking McLaurin in his cell and harassing him. Viewed in the light most favorable to McLaurin, these

7

allegations suggest that although Dalton had authority over Kabat and knew that he could present a serious threat, she did nothing to protect McLaurin or to investigate and punish Kabat's wrongdoing.

To be sure, supervisors generally cannot be held liable simply for overseeing subordinates who commit constitutional violations, *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016), and verbal abuse and idle threats typically do not trigger the Eighth Amendment, *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012). Additionally, failure to investigate another person's constitutional violation generally is not a separate wrong. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012). But the conduct McLaurin ascribes to Dalton goes beyond simply being a supervisor and failing to investigate: He alleges she failed to protect him from Kabat despite knowing Kabat presented a serious threat, and that by failing to investigate and punish him she was implicitly endorsing Kabat's continuing harassment. *Peatross*, 818 F.3d at 242; *see also Cox v. Draper*, No. 20-00081, 2021 WL 1984942, at *4 (M.D. Tenn. May 18, 2021) (recognizing claim against jail supervisor who "let assaults go" and would not let plaintiff file PREA complaint "the right way"). On initial review, this is sufficient to state a claim against Dalton.

McLaurin's claims against other prison officials are different. McLaurin broadly alleges that other officials knew of and were indifferent to Kabat's ongoing harassment, as well as the retaliation he experienced after he reported the assault. But there are no allegations

8

that Kabat's conduct was so longstanding, pervasive, or well-documented that these officials could be presumed to know Kabat was exceptionally dangerous to McLaurin. McLaurin thus cannot plausibly allege the necessary culpable mental state—*i.e.*, that these officials were deliberately indifferent to an unacceptable threat or implicitly approved of Kabat's conduct. In other words, these officials' alleged failure to intervene is the kind of conduct that is not actionable under § 1983. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Any claims that Defendants failed to protect McLaurin from retaliation by prison staff fare similarly. While the Court has no doubt that the shakedowns McLaurin says he endured were invasive and disruptive, they are not the sort of obvious threats of physical harm that would trigger a duty to protect under the Eighth Amendment. Moreover, to the extent that these claims are based upon Defendants' supervisory roles over other staff, they fail to state a claim because § 1983 claims generally cannot be based on supervisory or vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

Accordingly, McLaurin has properly stated a claim for failure to protect under the Eighth Amendment against Dalton only.

### 3. *Denial of Mental-Health Treatment*

A prisoner may state a claim under the Eighth Amendment for the denial of medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To do so, he must allege: (1) a sufficiently serious medical need,

9

and (2) facts plausibly suggesting that corrections officials were deliberately indifferent to that medical need. *Id.*

McLaurin broadly alleges that he was denied mental-health treatment at URF for the humiliation and anxiety he experienced as a result of Kabat's assault and the retaliation he faced for complaining about it. For screening purposes, the Court will assume that McLaurin's need for mental-health treatment was objectively serious. But McLaurin fails to allege which corrections officers knew about and ignored his need for treatment. As a result, he has failed to state a claim for deliberate indifference to a serious medical need.

**B. First Amendment Claims**

*1. Retaliation*

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: 1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from engaging in the protected conduct; and 3) the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Courts recognize that retaliation can seldom be demonstrated by direct evidence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Temporal proximity of an adverse action to a protected activity be sufficient, when combined with other allegations, to raise a plausible inference of retaliatory motive. *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

McLaurin alleges that, after he refused to sign off on his PREA complaint against Kabat and reported Kabat's ongoing harassment to his mother over the telephone, Salinas retaliated against him by placing him on a phone restriction.

Filing grievances and complaints is indisputably protected conduct. *Hill*, 630 F.3d at 472.

It is a closer question whether suspension of phone privileges suffices as an "adverse action" within the meaning of the First Amendment. The Sixth Circuit has suggested that "[p]risoners may be required to tolerate more than public employees … before an action taken against them is considered adverse." *Thaddeus-X*, 175 F.3d at 398. And it has previously considered temporary, 14-day suspensions of certain privileges to be "de minimis." *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). But the test is "whether a person of ordinary firmness would be deterred from exercising a right" by the adverse action. *Thaddeus-X*, 175 F.3d at 398. The Court concludes that the indefinite loss of telephone privileges as punishment for reporting a sexual assault sufficiently alleges an adverse activity.

As for a causal connection, McLaurin's complaint alleges that Salinas knew about his PREA complaint. While he has not supplied exact dates, his complaint states that the suspension of his phone privileges came shortly after he refused to sign off on his PREA complaint and while he was continuing to report Kabat's conduct to his mother. At the

11

pleading stage, this is sufficient. McLaurin has sufficiently stated a claim for retaliation against Salinas.

But McLaurin's claims for retaliation against other Defendants fare differently. To be sure, repeated cell shakedowns are sufficiently adverse actions to chill a person of ordinary firmness from exercising their First Amendment rights, especially when accompanied by the loss of property such as legal papers. *Does 8-10 v. Snyder*, 945 F.3d 951, 967 (6th Cir. 2019). But McLaurin attributes the shakedowns only to "MDOC Staff." His failure to name defendants responsible for these actions is fatal to the claims. *See Frazier*, 41 F. App'x at 764 (plaintiff failed to state a claim when he did not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). His allegations that the shakedowns and other conduct "spilled over" to URF are conclusory and lack factual support. And to the extent he wishes to hold Defendants liable as supervisors, supervisors generally are not liable under § 1983 unless they "either encouraged the specific incident of misconduct[,] … implicitly authorized, approved, or knowingly acquiesced in the constitutional conduct of the offending officers." *Everson*, 556 F.3d at 495 (internal quotations omitted). McLaurin's complaint does not plausibly allege that any Defendant approved of the retaliatory acts against him in such a fashion.

12

Because McLaurin's allegations do not permit a plausible inference that any Defendant beyond Salinas knew of his grievances and personally took any action against him because of those grievances, McLaurin has not stated a retaliation claim against any Defendant beyond Salinas.

### 2. *Failure to Investigate Grievances*

The First Amendment guarantees "the right of the people … to petition the Government for a redress of grievances." U.S. Const. Am. I. But it does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a petition for redress of grievances. *Smith v. Ark. State Hwy. Emps., Local 1315*, 441 U.S. 463, 464-65 (1979).

McLaurin accuses Dalton, Salinas, Lamentola, Levy, Baron, Christiansen, and Corrigan of ignoring his grievances and complaints under the PREA. But "[t]he alleged denial of a grievance or failure to intervene fail[s] to state a claim" under § 1983. *Mann v. Mohr*, 802 F. App'x 871, 876 (6th Cir. 2020). An inmate does not have a constitutionally protected interest in a prison grievance procedure or the right to an effective procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

### C. Violations of the Prison Rape Elimination Act

McLaurin also attempts to raise claims under the Prison Rape Elimination Act. But the PREA does not create a private cause of action

for prisoners or other individuals. *See McGibbon v. Stephenson*, No. 22-12167, 2023 WL 1819152, at *2 (E.D. Mich. Feb. 8, 2023) (Drain, J.); *Solomon v. Mich. Dep't of Corr.*, No. 19-12354, 2019 WL 5296770, at *3 (E.D. Mich. Oct. 18, 2019); *Peterson v. Burris*, No. 14-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016).

## IV. CONCLUSION

For the reasons explained above, McLaurin may proceed on Eighth Amendment claims against Officer Kabat and Sergeant Dalton and a First Amendment claim against Salinas. All other claims are **DISMISSED** from the complaint. 42 U.S.C. § 1997(e)(c); 28 U.S.C. § 1915(e)(2)(B).

This Order shall not be construed as a determination of the merits of McLaurin's complaint.

**IT IS SO ORDERED**, this 12th day of September, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge